Good morning, Your Honors. My name is Terry Collinsworth. I represent the Plaintiffs' Appellants, and my co-counsel Paul Hoffman is here with me. I'm going to try to reserve about three minutes for rebuttal. Your Honors, this is, I think, a relatively simple case. It's a pleading case, and the question here is whether plaintiffs have adequately alleged their claims. As the reply brief, I think, demonstrates, we really don't have a significant disagreement about the law. The overarching issue on this case is that the district court accepted Wal-Mart's version of the facts and gave Wal-Mart the benefit of all reasonable inferences. And, of course, on a motion to dismiss, this is inappropriate. What I want to do with my limited time this morning is to show concisely that with respect to each major claim, there was a factual dispute, and that Wal-Mart argued competing facts, and that the district court accepted those facts, and that in each case, this was error. If we look first at the third-party contract claim, again, on this issue, I think the statements of the law in both briefs are consistent. The sole issue is the intent of the parties, and Wal-Mart doesn't argue otherwise. What Wal-Mart asserts is its own version of the facts. It says at its brief at page 16, quote, that the right of inspection that it acknowledges that it has does not create any monitoring duty. So there is a factual dispute, because plaintiffs allege in detail that Wal-Mart, in fact, did promise, both through its codes of conduct and public statements and its own conduct, that it had promised to enforce the code of conduct for a plaintiff's benefit, and Wal-Mart asserts unilaterally that it did not. It is simply fundamental that Wal-Mart doesn't get to assert its competing version of the facts. Now, in our reply brief at pages 5 to 7, we detail with bullet points all of our allegations on this score, which show that Wal-Mart assumed responsibility for implementing, monitoring, and enforcing its code of conduct. Those allegations don't disappear because Wal-Mart disagrees and says something different. This is a classic case of a disputed contractual intent, and all the cases we cite are quite clear that you cannot dismiss when there's this kind of dispute. I think the most interesting case we cite at page 25 of our opening brief, the Microsoft case. In that case, the plaintiff's allegations actually conflicted with what the contract said in that case on third-party beneficiary, and the Court said it's inappropriate to dismiss because of a factual dispute. Also, Your Honors, if we look at conduct here, which informs how the parties acted in reliance upon the contract, Wal-Mart says repeatedly that they did monitor. Wal-Mart, in fact, said that its factory certification program, I'm going to quote from paragraph 48 of our complaint, has as its fundamental objective encouraging implementation of necessary changes that will ultimately result in an improved quality of life for workers who supply our stores with the merchandise our customers demand. That doesn't go away by simply saying otherwise. Now, if we look at the negligence claims, we have the same dynamic occurring. The district court did not get into the specific claims that we asserted for negligence and instead simply agreed that there was no duty, as Wal-Mart had argued. But if we look at the specific theories, in each case, again, there is a factual issue in dispute, and we have competing allegations. The first, negligent retention of control and supervision, is discussed in our opening brief at pages 38 to 41, and Wal-Mart's response to our allegations is to simply say that an element of the claim is that Wal-Mart had to have contributed to their injuries and that we didn't allege it. Well, we have numerous allegations showing how we allege that Wal-Mart contributed to their injuries. These are detailed at pages 9 to 10 of our reply and are in the first amended complaint at paragraphs 41, 42, 45, and 47. We allege that Wal-Mart's failure to act caused the plaintiffs to endure horrible conditions, that Wal-Mart's deals with its suppliers drove the prices down. Many other things contributed to the conditions that the plaintiffs suffered. So Wal-Mart's assertion that we didn't allege it or that they disagree with it simply can't get them out of a motion to dismiss here. On the negligent undertaking claim, likewise, the key concept here is whether Wal-Mart actually undertook a service and then performed it negligently. Wholly apart from contract or general foreseeability, doing the act itself creates the duty. And here, Wal-Mart's improper factual assertion is that it reserved the right to inspect but claims that it did not actually undertake any monitoring or obligation to enforce the code. That's in their brief at page 32. This conflicts with our specific allegations, which we summarize in our reply at pages 11 to 12, that most important that Wal-Mart actually undertook inspections. So to say that they didn't conflicts with our allegation in paragraph 44 of the complaint and that Wal-Mart reported the results of these inspections. And in paragraph 40 of our complaint, we note that they had huge reports with color-coded results and so on, so that clearly they undertook inspections.  We allege that Wal-Mart expressly stated, quote, in many cases our auditing process is the main law enforcement mechanism for the factories from which we source. So I understand that basically your theory is that if Wal-Mart had simply had a buy-sell supplier agreement with no right of inspection, that we wouldn't be here today. That there was no other duty flowing. Just simply Wal-Mart purchasing in a third world or a depressed country is not enough to create any duty to your clients, to your company. That's correct, Your Honor. But because they have the standards and there's a right of inspection so that they can assure that to their satisfaction that the supplying companies are living up to Wal-Mart's self-imposed requirements, that that now creates a duty to the employees. That's correct, Your Honor. We go farther than that, though. This case is not a we-just-bought-the-goods case, which they're trying to paint it as. In fact, they're totally embedded with their suppliers. They have a long-term relationship with them. All of this is alleged in the complaint. And it's more than a right to inspect. As I've just reviewed, they actually do go in and inspect. They've assumed that obligation.  Yes, absolutely, Your Honor. And I note that in paragraphs 35 and 30. You know, if they have the right to inspect, one assumes that they will. So I'm not sure what draws from that. Yes. Yes, Your Honor. I just would point out that in paragraphs 35 and 36 of our complaint, we point out that Wal-Mart had a horrible problem in that the public was. Counsel, we know that. Thank you. Just to conclude on the negligent undertaking, that because they did undertake this, this is the classic Good Samaritan case. And that the classic no good deed goes unpunished. Well, I question whether there was a good deed. But the law is clear that once you do try to undertake one, you are obligated, you have a duty to not do it negligently. On the final negligence theory, third party. Of course, then we have to, in order to make that work, you have to still establish that the employees are the direct beneficiaries of this. Well, under the negligent undertaking theory, yes, you have to show that Wal-Mart undertook to benefit this group of folks, and our plaintiffs are among those. Every one of them was working in a factory. So every time that one of the plaintiffs in one of these supply operations feels that they've been aggrieved, they're, in essence, now not looking to their own employee. They're looking to Wal-Mart as the ultimate guarantor of the employment conditions, so long as those employment conditions are such that Wal-Mart's right of inspection extends and standards extend to them. I don't think that's quite right, Your Honor, because what we're saying is that they negligently did their inspection. Well, but they had to have a duty. So having a duty, once you create the duty, at least your argument is that any employee in any one of these operations who feels that the standards have not been lived up to has a cause of action to come here to the United States and sue Wal-Mart as the ultimate guarantor of the operations in the home country. Under the negligence theory, no, Your Honor. But under the contract theory, yes. Under negligence, if they actually did a good job, they could be sued. Well, they still can be sued. They could be sued, but as you said, this is a pleading case, and at least they, under your theory, would get to the jury. Yes, Your Honor. Okay. And I'd like to briefly talk about our joint employer theory. Now, when you talk about intent of the parties, the consequences of the result you suggest is that Wal-Mart voluntarily and intentionally through this clause undertook to expose itself to the kind of liability you're talking about. That's correct, Your Honor. It's very much like what we had 20 years ago, all these employers issued employment manuals that promised any new hire all these rights. These are domestic employees. That's correct. That says where there are all sorts of employer and other obligations. What you're talking about is they've done it now globally. That's right. And how did they solve the problem? Employers, when they found out they could get sued on those manuals that they used to issue domestically, they put a disclaimer in there. They say, this is what we'd like to do. This is a wonderful idea that we have. It's not binding. They had a direct employer-employee relationship. The difference is that they're not the employer of these employees. Under our third-party contract theory, they're not. They don't need to be the direct employer, but they're obligated because of the benefit they extended by contract to these offshore employees. So now we're circling back to the logic of what you're proposing. That's correct. In terms of intent. In terms of intent. Now, just briefly. Counsel, Counsel, Judge Gould, I have a question for you. Putting aside for a minute the technical legal theories, what would be, if your theories are accepted by a court, what's the consequence for whether multinational enterprises based in the U.S. would attempt to impose such standards on their suppliers' factories? Well, Your Honor, I think it's important to ask what is our objective here, if you want to look at the policy question. And if they actually intend, as they tell the public, to make these benefits available, then they're bound to that. If they don't intend that and it's just a public relations ploy that they're getting away with, then they have to put a disclaimer in there that says this has no binding effect, it's just a good idea that we'd like to try. So that the argument that this will somehow limit companies wanting to do good things, it doesn't fly because the company gets to make a choice whether they're serious and they really want to do it or they're just saying it and they're misleading not only the public, but the workers and the consumers. And I think that at the end of the day, that's what happened here. Now, did the workers, did the workers around the world, like in these other factories, did they have this contract language of standards put before them? I'm having trouble seeing how a worker, you know, in Bangladesh or in Bolivia would be misled by what Wal-Mart said in its contract. Because, you know, unless there's some evidence that the suppliers supplied those workers with such a contract. Well, your honor, we do allege that Wal-Mart requires under these terms of this agreement to put the terms of the code up on the wall. And make it available to the workers. But reliance is not an element of our claim. The workers could be completely ignorant of this. But if they then find that the reason that their contract was breached or that they were negligently injured was Wal-Mart's failure to meet its own legal duties, then they have a right to sue. I only have a minute left. I'd like to reserve that if I may. Thank you. May it please the Court, Thomas Peterson for the appellee. I think there are three remarkable things to note about this case at the outset. And maybe the better way of putting that is three things that the plaintiff is trying to accomplish, which strongly suggests that it was proper to end this case on the pleadings and I think that speak to the kind of policy considerations which become very important in assessing how common law claims and negligent claims develop that the Court's already been alluding to in some of its questions. The first is, this is an effort to apply California law. Now, if you look at the California causes of action that are alleged in this case, what the plaintiff is asking you to do is take them well further than any California court has ever done. The second thing about the case is that it is an effort, as the Court has recognized in some of its questions, to open the United States courts by application of State law to the employment grievances of potentially people all over the world who don't work here and who are actually employed by suppliers in foreign countries. And that's — that has enormous implications for the Federal Foreign Relations Affairs of the United States, given that, as we pointed out, the U.S. encourages foreign trade and in the context of that specifically respects foreign sovereignty over labor conditions. And the third — Kagan. Of course, Wal-Mart would be free not to make any types of promises. Well, Your Honor, that's true. But let me turn to that, then, and I'll pass over my third point for the moment about buyer-seller relationships would be totally changed. And let's talk about that, because even in the context of a Rule 12 motion, it was altogether proper for the Court to decide that there was no promise in this case that was enforceable for the benefit of these foreign workers. And now, keep in mind, the Supreme Court told us in Twombly, even in a Rule 8 context, they have the obligation, the plaintiff, to demonstrate a basis by which they can proceed on a claim. And Twombly underscores that it's not a sufficient answer to say, let's just send people off to discovery in large cases, because the costs of that are enormous. Now, under California law, the question of intent here is really, was there a reciprocal promise? We can all acknowledge that the suppliers agreed to adhere to local conditions of employment and the like, but was there a reciprocal promise that Walmart made for the benefit of these foreign workers? And there are, I think, two conclusive answers which justify Judge Guilford's decision to terminate the case on the pleadings with respect to that question. And the framework here, the California courts have told us in the Prouty case, which we've cited to you, is you look at the terms of the contract and you infer the intent from that. And you have here every one of these standards of suppliers in the record at Clerk's Record 23, tab E, and there's no dispute about the authenticity of them. Every one of them characterizes Walmart as possessing a right of inspection. That's what Walmart has. And let's keep something in mind about that. That is a voluntary prerogative that Walmart undertakes, and it's the kind of prerogative that has been affirmatively encouraged by our Federal Government. You'll see in the record in this case a 1996 report of the Department of Labor, which has specifically stated in the context of child labor issues that it is appropriate to encourage foreign companies to adopt these voluntary standards. But that doesn't mean as a consequence that anybody is undertaking a contractual obligation to protect them. And then there's a second way, Judge Fletcher, to verify that intent in this case, and that's what the California courts consistently do. And that is no one contends in answer to Judge Gould's question earlier that these plaintiffs are parties to this contract, nor is there an allegation that they've ever seen it. If you look at the allegation about the posting of notice, it's about the standards of suppliers. It's not about the contract itself. That's in 46E of the plaintiff's complaint. So they're not parties. So to validate their claim under Rule 8A2, they've got to establish they have a basis to proceed on the contract. And like any third-party beneficiary, which is what they claim to be, they would have to demonstrate to the court's satisfaction that they could step into the shoes of the party, that is, the suppliers. That there was an intent on the part of Walmart to benefit them by what I suggest is only its right of inspection, not its duty of inspection. And the way we know that could not have been intended to benefit the plaintiffs is every one of these contracts describes the remedy for noncompliance. The remedy is termination of the relationship between the supplier and Walmart. Now, how in the world could that possibly be designed to benefit the workers? That is, that if this is not complied with, the consequence is not Walmart undertaking to pay wages or guarantee particular working conditions. It's Walmart saying that we will no longer do business with the supplier, and thus, you know, based on the allegations in this complaint, the plaintiffs would lose their jobs. So there isn't an undertaking at all in this case under contract law, so there is no legitimate third-party beneficiary claim that was properly resolved on the pleadings. Let me turn then to the negligence claims. And again, let's focus on them in the context of the argument that was put to you that this is all a pleading case, and notwithstanding the admonition of Twombly about creating massive, expensive litigation, that we should take these claims that push State law and allow them to go forward. Third-party beneficiary negligence theory, that's one of their theories. Well, that simply incorporates the agreement, which we've just talked about. And that doesn't add anything if you conclude that they aren't third-party beneficiaries. And in addition, let's keep in mind that the California Supreme Court has made very clear in recent case law, most notably the Ehrlich case, that it disapproves of creating negligence claims out of contract claims for the most part. And they present no even vaguely analogous case. The closest they give to you are California cases about people suing for wills that were faultily drafted when they were beneficiaries. The negligent undertaking theory. The negligent undertaking theory, again, if you look at the allegations of the complaint about it, 126, it takes us back to those standards of suppliers. That's how the undertaking was supposedly accomplished. In addition, however, the leading case here is Artiglio, decision of the California Supreme Court. And in that case, the California Supreme Court affirmatively rejected the argument that a reserved right of inspection, in that case in the context of material used for the production of breast implants, would be sufficient to support a claim. That's the kind of thing we're talking about in this case. And let's add one other factor, again, which I think justifies a determination on the pleadings of no negligence claim. And that is that if you look at the California case law in Artiglio itself, it relies on Section 324A of the Restatement of Torts. The remedy in 324A is a remedy for physical injury. That's not what's being claimed in this case. This is a claim for economic loss and for labor conditions which are deemed unsatisfactory. So, again, you're being asked to take California law well past anywhere California has taken it, and I think on the pleadings you can determine not to do that. With respect to the negligent retention and control theory, there again, let's look at the source of the principle that they're relying on. They're relying on cases which have to do with things like an independent contractor coming into a workplace and creating a dangerous condition, and the question becomes whether third parties can sue. Now, that bears no practical relationship to the kind of facts we're dealing with here, number one. Number two, yet again, California Supreme Court has said in the Hooker case that this is an adoption of 414 of the Restatement of Torts, which once again confines the recovery for physical injury. And in the final sentence of the Hooker case, the California Supreme Court gives an example of what is not affirmative conduct. And the example they give is a situation where the defendant appreciates there is a hazardous condition on the worksite, and despite retention of control, takes no affirmative action to correct it. That is the example the California Supreme Court gives of what is insufficient to state a claim in California. And I submit to you that there's nothing more in this complaint, and particularly when you then overlay the fact that you'd be moving into a factual scenario, which is dramatically different than what we've been dealing with before in California. And then I'd like to turn briefly to this, the policy implications here. I've already mentioned to you the fact that the Department of Labor has affirmatively endorsed exactly the sorts of things, these kinds of policies, because they have a tendency to improve conditions throughout the world. I've already mentioned to you the fact that the U.S. Government has an express trade policy designed to encourage foreign governments to address foreign working conditions. And in fact, it comes in two perspectives. One is a specific provision which limits a disbarment as a trading partner if the local and the other is a power, a discretionary power in the U.S. trade representative to take action or decline to take it. I submit to you that those are not only policy considerations that bear on the creation of liability and counsel against it, but they also strongly reinforce the argument that we've given to you, which was fully presented and ventilated in the district court, though not reached, that if California were to try to create a cause of action in this situation, that it would be preempted under the foreign affairs powers that have been recognized by the Supreme Court, most notably in the Yaramende case. Because what the Court has said is that in circumstances where the State interest is nonexistent, and here it's very difficult to see how California would have any legitimate interest in redressing employment conditions in Indonesia or Swaziland, there is almost automatic field preemption with respect to foreign affairs issues. But even if you acknowledge some element of State interest by virtue of the fact that what we're talking about are traditional tort type and contract claims, that doesn't change the equation, because then Justice Souter teaches us in the Yaramende case that what we have to look to is whether there's any conflict. And as I've said, these policies of the United States speak to how we deal with foreign countries and how we expect them to redress their labor practices. Counsel, Judge Gould with a question, please. Was foreign affairs preemption raised in the district court by Wal-Mart? Yes, Your Honor. You'll find it. You'll find the general discussion of what I'll call the overlay of foreign trade activity in the first five pages of our motion to dismiss. I don't know that the word foreign affairs preemption was mentioned there. But what is discussed is several of these relevant statutes that talk about the trade policies of the U.S. There's a lengthy declaration at Court Record 24 that attaches all of them. Then what happened with respect to the development of the issue is it was further addressed much more extensively both in a series of amicus curiae briefs and in the reply briefs. And so by the time the record in the district court had fully developed, the issue was fully presented. Now, of course, Judge Guilford didn't have to reach the question because he concluded that he didn't need to, having determined that there was no basis for these claims to proceed under State law. Now, let me just briefly. Go ahead. Thank you. Let me just briefly refer to — let me just — one other thing I meant to draw attention to with respect to the policy about not discouraging voluntary programs. And that is I would commend to the Court a discussion on that subject in this circuit's decision in Moreau v. Air France, which is cited in the reply brief of the appellant, actually, which the Court will find at 343 F. 3rd, 1179. And it's interesting because there Judge Hawkins wrote an opinion for the Court in which he cited with approval a district court decision which dealt with a joint employer question in which the issue was whether the dressmaking retailer who ordered merchandise from someone who sewed the dresses could be responsible for the labor conditions based upon the fact that the retailer had undertaken to do inspection. And in discussing that opinion, this Court favorably cite — favorably drew attention to the proposition that it would be counterproductive and create disincentives if we were to expose clothing designers who monitor compliance with Federal law by those from whom they purchase goods to liability. And I think that's the real risk here, that creating liability in this kind of case would really discourage efforts through voluntary action to improve working conditions overseas. But I come back again to I think what may be the most direct theme in this case, which is you're basically being asked to change California law, even as to things like joint employer. You're being asked to apply that concept in a way where you'll find no case where it's ever been done before. And I urge you that that is not a traditional function for a Federal court and there are strong policy reasons for you not to do it. Thank you. Thank you. Thank you, Your Honors. In my brief time, first of all, I would like to point out that this case is unique among the kinds of cases that might be implicated by a ruling because Walmart actually puts this supplier agreement into the contract, and that's why we have a contract claim here. There's no reliance element. These people don't have to know that it exists. If they were the intended beneficiaries, then they're allowed to sue on the contract. And I'd like to read just briefly paragraph 47 from our complaint. We quote from Walmart's materials where they say, In many cases, our auditing process is the main law enforcement mechanism for the factories from which we source. That's the key to this case. They're saying they're doing this. They're saying that they've come in to do this for the benefit of these people. They've called off the public and the scrutiny that would come if they weren't doing this, but they're not doing it. I would also add again that as we cite at note 7 on page 24 of our opening brief and the reply at 31, that a disclaimer would solve their problem if they were interested in doing something voluntary. Finally, the foreign affairs issue was not raised below. I was counsel of record. There were some issues about policy, but that was never discussed and never raised before the court. I think my time is up. Thank you very much, Your Honor. Thank you. It's an interesting case. We appreciate the argument of all counsel. All right. The case argued is submitted. And we will take to the last case on the calendar. The first shall be last, which is Afzal v. Holder. Thank you.
judges: Fletcher B. , Fisher, Gould